only that he had retained money of his client after demand for payment, but that he had converted it to his own use and, therefore, it follows that the recommendation of the Board of Governance must be approved.

The respondent, Nicholas R. Degillio, is disbarred as an attorney in this court and it is directed that his name be stricken from the record of attorneys. It is ordered that he pay the costs.

## Aldine Building and Loan Association *v.* Sykes, Appellant.

Argued April 23, 1942. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

The facts are stated in the opinion of the court below by FRONEFIELD, P. J., as follows:

This is a petition by the defendant to open a judgment against her upon which a rule to show cause was allowed. Testimony was taken before FRONEFIELD, P. J. The rule must be discharged.

On April 9, 1930, Matthew A. Sykes and Helen M. Sykes, his wife, gave a bond and mortgage for $4,600.00 to the plaintiff secured upon premises in Delaware County, Pennsylvania, which they owned. They also subscribed to twenty-three shares of the stock of the 30th Series of the plaintiff association as collateral security for the loan. On January 28, 1932, Matthew Sykes et ux. conveyed the premises to Annis K. Sykes under and subject to the mortgage and assigned the said shares to her subject to the prior assignment to the plaintiff. On February 4, 1932, Annis K. Sykes conveyed the premises to Horace C. Sykes and Clara Sykes, his wife (the latter being the present defendant), under and subject to the mortgage and assigned the said shares to them subject to the prior assignment to the plaintiff.

On February 29, 1932, Horace C. Sykes and Clara Sykes executed and delivered to the plaintiff the collateral bond involved in the present case, which, after reciting the foregoing facts, provided that "the condition of this obligation is such that if the above obligor will well and truly faithfully and promptly pay the said contributions upon the said stock as aforesaid, and the interest upon the principal sum and premiums as aforesaid, when and as the same are payable, under the terms and provisions of the said bond and mortgage hereinbefore referred to, and will also pay all fines which may be imposed for non-payment of the said contributions upon

the said stock, interest and premium, and the taxes which may be assessed against the said premises, and all arrears of any ground rent reserved thereout and the interest upon prior encumbrances secured upon the said premises when and as the same are due and payable, and shall at all times keep the building mentioned in said mortgage insured against loss or damage by fire for the benefit of the Mortgagee, to the amount of $4,600.00 in a Company satisfactory to the said Mortgagee, and perform all the covenants and stipulations in the said Bond and Mortgage contained for and during the full period and term of the running of the said stock in the 30th Series, then this obligation to be void; otherwise to be and remain in full force and virtue."

On April 11, 1933, the plaintiff and Horace C. Sykes and Clara Sykes entered into an agreement (commonly called a reset agreement) whereby the twenty-three shares in the 30th Series were cancelled, their value applied to reduce the mortgage loan from $4,600.00 to $3,800.00, and Horace C. Sykes and Clara Sykes subscribed to nineteen shares in the 36th Series, Book No. 4000, and assigned said shares to the plaintiff as further collateral.

On August 4, 1933, Horace C. Sykes and Clara Sykes conveyed the premises to C. Ellwood Young and Alice P., his wife, under and subject to the mortgage and assigned the said nineteen shares in the 36th Series to them subject to the prior assignment to the plaintiff.

On September 9, 1936, the Youngs were in default in their payments to the association and the Board of Directors of the plaintiff association, at a regular meeting, appropriated the value of the said nineteen shares of the 36th Series, $437.00, which was applied as follows: to delinquent dues $302.07 and on account of delinquent interest, $134.93. There remained due to the plaintiff at that time $330.26 interest and $91.20 premium. No new shares were issued to, or subscribed to by, the Youngs at that time.

From September 9, 1936, to October 11, 1938, the Youngs continued to make irregular payments totaling $792.85, reducing the balance as shown on the books of the association, of accrued interest to $62.87. No dues or contributions on shares had been charged against the Youngs during that period. However, 1936, 1937 and 1938 taxes on the mortgaged property were unpaid. Receipts for said payments were entered in Book No. 4000.

On October 11, 1938, the Youngs made a payment of $100.00, which more than paid the said arrearage of interest and, on October 28, 1938, the secretary of the plaintiff association sent to Mr. Young the following letter:

"We return herewith your book No. 4000, which has been cancelled, as we have placed your $3,800 mortgage on a share basis.

In October, you paid the sum of $100.00 which was applied as follows:

| | |
|---|---:|
| Balance of interest due to and including Oct. 11th, 1938 | $62.87 |
| October dues, Book No. 4401, 44th Series | 19.00 |
| To be paid account taxes | 18.13 |
| | $100.00 |

Book No. 4401 is enclosed herewith, and we also enclose herewith a stock transfer form to be signed by yourself and Mrs. Young and returned to us.

Commencing with the November 8th meeting, your monthly payment will be $50.00, which will be applied as follows:

| | |
|---|---:|
| Dues | $19.00 |
| Interest | 19.00 |
| a/c of taxes | 12.00 |
| | $50.00 |

I call your attention to the fact that this payment must be made regularly on the second Tuesday of each month without fail, and you should budget yourself accordingly.

The Association will not again carry this mortgage as a straight mortgage and unless the payments are made, there will be no alternative but to institute foreclosure proceedings."

The Youngs executed the said assignment and returned it to the plaintiff. In November, 1938, Mr. Young informed the secretary that he could not pay $50.00 a month but agreed to pay $45.00 a month. From November 1938, to June 1941, inclusive, the Youngs made irregular payments totaling $780.00 and the mortgage was again in default. Receipts for said payments were entered in Book No. 4401.

The transactions between the plaintiff and the Youngs were carried on without any notice to Horace C. Sykes and Clara Sykes.

Horace C. Sykes having died, on April 25, 1941, the plaintiff entered of record the bond dated February 29, 1932, and entered judgment against Clara Sykes alone. It is this judgment which the defendant seeks to open.

It is the contention of the defendant that she was but a surety in this transaction and that, because the plaintiff, without her consent, changed the loan of the Youngs from the 36th Series to the 44th Series, she was legally discharged from her obligation. She relies on the cases of *Double Dollar B. & L. Association v. Kushin*, 306 Pa. 121, and *Jacob Sall B. & L. Association v. Heller*, 314 Pa. 237, where similar reset agreements were held to be a change of the contract in a material part so as to affect the nature and extent of the surety's liability. However, in those cases, there was no question but that the defendant was a third party, not in the line of title, who had guaranteed the debt of the mortgagor. In the present case, the defendant was in the line of title and it is clear from the testimony that she had taken title under and subject to the mortgage prior to the execution of the bond upon which judgment was entered. Therefore, without deciding whether the cancellation of the shares in 1936 and the issuance of new shares in 1938 had the same

legal effect as a reset agreement, we do not feel that the Kushin and Heller cases are in point.

We feel that this case is controlled by *Joyce, to use, et al. v. Hawtof,* 135 Pa. Superior Ct. 30, where it was said "It was made clear in the Willock case (*Willock's Estate,* 58 Pa. Superior Ct. 159) that under the facts shown the mortgagor and his grantee were each liable as principal debtors, each continuing liable severally for the payment of the debt (pp. 164, 165). Consequently, the authorities cited by the appellant with relation to the effect on the liability of a surety of the release of part of the security have no application. In the present case the facts are even stronger, for Mollie Cohen did not assume and agree to pay the mortgage. (See Act of June 12, 1878, P. L. 205, 21 PS §655.) She only became liable to the mortgagee by virtue of her independent agreement for the extension and that without the knowledge or approval of the original mortgagor. The argument of the able counsel for the appellant is based upon a confusion of terms. In a number of cases the relation between the original mortgagor and the grantee of the real estate who assumes and agrees to pay the mortgage is described as one of principal and surety as between themselves. The expression "principal and surety" does not correctly describe the relationship from the standpoint of the mortgagee." Accordingly, it was held that the fact that the mortgagee entered into an extension agreement with the grantee did not release the grantor. Therefore, the defendant's rule must be discharged.

Defendant appealed.

*A. B. Geary,* of *Geary & Rankin,* for appellant.

*Wendell E. Warner,* with him *Taylor & Stern,* for appellee.

PER CURIAM, May 11, 1942:

The order of the court below is affirmed on the opinion of President Judge FRONEFIELD.